HENRY TIFFANY *vs.* JOHN SAVAGE.—*December* 1844.

Where a plaintiff contracts with the defendant's agent, in an action on the contract, it is necessary to give proof that the agent had some authority.

Although upon the whole testimony in a cause, on both sides taken together, the conclusions of a judge might be, if acting as a juror, that the verdict should be for the defendant, yet if there is evidence legally sufficient to warrant the jury in finding for the plaintiff, when left unaffected by the defendant's proof, the court will not say to the jury upon the motion of the defendant, that there is no evidence in the cause, or that the plaintiff's cause is not proven.

APPEAL from *Washington* County Court.

This was an action of *assumpsit*, for goods sold and delivered. The defendant pleaded *non assumpsit*, &c.

The plaintiff to support the issue on his part joined, gave in evidence the following account, and affidavit attached to it, for goods, wares, and merchandise, viz :

"*Baltimore*, September 22, 1838.—*Mr. John Savage*, by *Lewis M. Hughes*, bought of *Henry Tiffany*, 2 pieces 3-4 check, 81 at 10 $8.10, &c., $260.07." &c.

The plaintiff by his counsel, then read in evidence to the jury certain interrogatories, by him filed in this cause, as follows, &c.

And the answers to said interrogatories by *Lewis M. Hughes*, a competent witness, sworn and examined on the part of the plaintiff, as follows :

1st. In the month of September 1838, I went to *Henry Tiffany's* and bought the goods in the name of *John Savage*.

2nd. I told the plaintiff, the said *Henry Tiffany*, that the goods were for *John Savage*, and had them directed to his iron works in *Pennsylvania*, to the care of his clerk, I think.

3rd. I believe the account as exhibited to me, is a true account of the goods purchased from said *Tiffany* for *John Savage*.

4th. I did receive a letter from said *Savage* in reference to said goods. I decline attaching the said letter to the deposition, because a portion of it is separate and distinct from the

17     v.2

transaction, and is private. The annexed statement, is a full, perfect, entire and true copy of that portion of the letter, in the handwriting of said *Savage*, relating to this transaction: "Why not answer *Longhead's* letter about the number of boxes forwarded; the bill of lading calls for 13 boxes, marked *A. McCallister, Huntingdon.* 19 bags of coffee, 2 bbls. sugar, marked *John Savage.* There was, likewise, a bale of goods marked *A. McCallister,* not entered on bill of lading. Really, it is too bad, to receive goods shipped, as you stated in your letter, on the 24th September, on the 8th day of October; a voyage to the *West Indies* could be accomplished before. Extreme inattention was to be found somewhere; three days ought have sufficed. No numbering of boxes, no notice of the bill of goods, &c. You put no card on the boxes as I requested."

5th. I have the letter in my possession, and the answer to the fourth interrogatory is my answer to this.

6th. The letter referred to, did acknowledge the receipt of the goods, with the exception of one package, which said package, deponent since learned, had been received by said *John Savage.*

7th. I did direct the said plaintiff to charge the goods to the said *Savage* at the time they were purchased.

The defendant then read in evidence to the jury, interrogatories by him filed in said case, as follows, to be propounded to *Lewis Hughes* and to *Holker Hughes,* as witnesses to be examined on the part of the defendant.

And the answers to said interrogatories by *J. Holker Hughes,* a competent witness, sworn and examined on the part of the defendant, as follows:

1st. I had purchased from *John Savage,* (the defendant above referred to,) a certain lot of blooms, and undertook to procure for him, and to pay for goods to be purchased in *Baltimore.* I think I gave instructions to *Lewis M. Hughes* (my agent in *Baltimore, Maryland,*) to purchase such goods as *John Savage* might require, from any house with which I was in the habit of dealing. The bills of those goods, or copies

of them, were rendered to me, and duly charged to said *Savage*, the defendant, on the "*Mont Alto*" furnace books, and on said books properly credited, among which said bills so credited and charged, was one from *Henry Tiffany* for the goods above referred to and received by said *Savage*. The reason I undertook to pay for the blooms, purchased by me from said *Savage* in merchandise, was, that I had been dealing for a number of years in *Baltimore*, and had credit with merchants, among whom was said *Henry Tiffany*, and said *Savage* wanted goods, and was willing to receive them in exchange for the blooms above referred to, he being unacquainted with the merchants of *Baltimore*. The bill shown to me, and attached to interrogatories, and bearing date the 22nd September, 1838, which said interrogatories are signed by *D. G. Yost, esquire*, as counsel for plaintiff, is, I think, the amount of the bill rendered to me, and credited on "*Mont Alto*" furnace books to the aforesaid *Henry Tiffany*.

The plaintiff then read to the jury in evidence, the answers of the said *Lewis M. Hughes* to the above mentioned interrogatories, filed by the defendant, as follows:

1st. I purchased the goods upon the authority of a letter from *Holker Hughes*, who directed me to have them charged to *John Savage*.

2nd. I do not recollect of stating at whose instance the goods were purchased at the time I ordered them.

3rd. In answer to this interrogatory, I refer to my answers to fourth, fifth and sixth interrogatories on the part of plaintiff.

4th. It was in compliance with the instructions from *Holker Hughes*, referred to in answer to first interrogatory.

Whereupon the defendant, by his counsel, prayed the opinion and direction of the court to the jury from the evidence above set forth, the plaintiff is not entitled to recover, because it is not proved by said evidence that the said *Lewis M. Hughes* was the authorized agent of said defendant in purchasing said goods, wares and merchandise from said plaintiff, and forwarding them to said defendant; which opinion and direction the court gave. The plaintiff excepted and appealed to this court.

The cause was argued before ARCHER, DORSEY, CHAMBERS, STONE and SEMMES, J.

By D. G. YOST, for the appellant, and
By PRICE, for the appellee.

SEMMES, J., delivered the opinion of this court.

The question for our decision in this case is, whether upon the facts proved on the trial below, the court erred in not leaving it to the jury to decide the issue between the parties?

The suit was brought by *Henry Tiffany* against *John Savage*, to recover the price of a certain quantity of goods, which had been purchased of the plaintiff by a certain *Lewis M. Hughes*, and forwarded to the defendant. The testimony offered by the plaintiff, consisted of an account with a probate thereto annexed, and of the deposition of the said *Lewis M. Hughes*, which had been taken, together with the deposition of *Holker Hughes*, the defendant's witness, under a commission issued for that purpose. The account was headed thus,

"BALTIMORE, *Sept. 22nd*, 1838.
"*John Savage*, by *Lewis M. Hughes*,
Bought of *Henry Tiffany*."

Then follows the items, amounting in all, to $260.07. To this account is annexed the affidavits of the plaintiff and his clerk, *George Stanard, jr.*, proving the correctness of the same, in the usual way; and that it remained unpaid. The deposition of *Lewis M. Hughes*, stated in substance, that he had purchased the goods from the plaintiff in the name of the defendant, and that he told the plaintiff the goods were for the defendant. That deponent had them directed to the defendant's iron works, in *Pennsylvania*, and that he afterwards received a letter from the defendant, in which he complained of delay in the arrival of the goods, and of a want of attention through some one's fault, in his not receiving proper information in respect to the same; that said letter acknowledged the receipt of the goods, with the exception of one package, which deponent afterwards learned had been received by the defendant. But it was shown

by the deposition of *Holker Hughes*, the defendant's witness, that the said *Holker Hughes* had purchased of the defendant a certain lot of blooms, and had undertaken to pay for them in merchandise, to be procured in *Baltimore*. That he accordingly gave instructions to the said *Lewis M. Hughes*, (deponent's agent in *Baltimore*,) to purchase such goods as the defendant might require, from any house with which deponent was in the habit of dealing. That the goods were purchased as ordered, and bills for the same rendered to deponent, with which the said defendant was duly charged, &c., on the books of the "*Mont Alto*" furnace; that amongst the bills so rendered and charged, was the bill of *Tiffany*, the plaintiff, for the goods bought of him, as aforesaid, by the said *Lewis M. Hughes ;* and upon the whole evidence, the defendant by his counsel, prayed the opinion and direction of the court to the jury, that the plaintiff was not entitled to recover, because it was not proved that *Lewis M. Hughes* was the authorized agent of said defendant, in purchasing said goods from the plaintiff, and forwarding them to the defendant, which opinion and direction the court gave; and it is contended, that the court by thus taking all the facts within its own exclusive cognizance, usurped the province of the jury, and decided upon the "measure and quantity of the proof," as a question of law. Let us see whether the judgment of the court below, is obnoxious to the objections which have been urged against it. It was certainly necessary, in order to entitle the plaintiff to recover, to establish the fact that the said *Lewis M. Hughes* had some authority, either express or implied, from the defendant, to act as his agent in purchasing the goods. And, if the court below was right, in granting the defendant's prayer, we must conclude that the evidence offered by the plaintiff, taken by itself, was legally insufficient to warrant the jury in finding that fact. See the case of *Cole, vs. Hebb, adm'r. d. b. n. of Wm. Gwyther*, to be found in 7 *Gill & John.*, 20. But we are not warranted in coming to such conclusion, from the tes‧timony offered by the plaintiff in this cause. The account, which we find in the record, with the joint affidavits of the

plaintiff, and his clerk, *George Stanard, jr.*, thereto annexed, as aforesaid, shows on its face to be an account by the plaintiff, against the defendant, for goods sold and delivered, and is the plaintiff's identical cause of action in this suit. This account, it appears, was suffered to go to the jury as evidence; to which is to be added, on the part of the plaintiff, the deposition of *Lewis M. Hughes.* Now, notwithstanding it may be true, that if the whole testimony, in the cause on both sides, be taken together, our conclusion might be, if sitting as a jury, that the verdict should be found for the defendant; yet seeing, as we do, that there was evidence offered by the plaintiff, legally sufficient to warrant the jury in finding the issue, which it was offered to sustain; testimony, which if left unaffected by the defendant's proof, would have been conclusive in the plaintiff's favor; we are of the opinion, that the court below erred in granting the defendant's prayer.

We therefore, reverse the judgment, and order a procedendo.

JUDGMENT REVERSED.